# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | Case No. 04-0531-CV-W-GAF |
| | ) | |
| JOHN P. RYAN, JR.; LINDA C. RYAN; | ) | |
| FIRTH NATIONAL BANK OF MISSOURI; | ) | |
| GORDON D. GORMAN; SUSAN O'REILLY, | ) | |
| THOMAS O'REILLY; and MICHAEL | ) | |
| O'FLAHERTY, In His Official Capacity As | ) | |
| Assessor of Jackson County, Missouri, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by the Plaintiff, the United States of America ("United States"). (Doc. #37). The Defendants, John P. Ryan and Linda C. Ryan, oppose this Motion arguing that a genuine issue of material fact exists with respect to the valuation of each spouses' interest in the subject real property. (Doc. #41). The Ryan's expert opines that Mrs. Ryan is entitled to 66.5224% of the proceeds of the foreclosure sale whereas the United States' expert contends that Mrs. Ryan's share of the foreclosure proceeds is limited to 60.421%. (Doc. #41, #38). This Court finds that a genuine issue of material facts exists as to the valuation of Mr. and Mrs. Ryan's individual interests in the subject real property which precludes summary judgment. As such, the United States' Motion for Summary Judgment is GRANTED in part and DENIED in part.

1

<u>**DISCUSSION**</u>

**I.      Facts**

The United States commenced this action to collect unpaid federal income tax liabilities owed by John P. Ryan, Jr. ("John Ryan"). (Doc. #38). The United States seeks a judgment for the unpaid balance of tax assessments against John Ryan and further seeks to foreclose its tax liens against John Ryan's interest in four tracts of real property located in Jackson County and Cass County. <u>Id</u>. The four tracts of real property upon which the United States seeks foreclosure to satisfy John Ryan's income tax liabilities are owned by John Ryan and his wife, Linda Ryan, as tenants by the entireties. (Doc. #39, ¶ 9, 17). Based on the Supreme Court's ruling in <u>United States v. Craft</u>, 535 U.S. 274 (2002), federal tax liens attach to a delinquent taxpayer's interest in property owned as a tenant by the entirety. (Doc. #38). The sole dispute between the parties in this Motion for Summary Judgment is the valuation of each spouses' interest in the subject real property.

<u>Count I: Federal Income Tax Liabilities of John Ryan</u>

**A.      *John Ryan's Federal Income Tax Liability: 1988, 1989, 1991***

In 1997, the United States commenced an action against John Ryan's professional corporation, "John P. Ryan, Jr., P.C."[1] (Doc. #38, ¶ 1). The civil action, captioned as <u>United States of America v. John P. Ryan, Jr., and John P. Ryan, Jr., P.C., a Missouri Corporation</u>, Case No. 97-1424-CV-W-5 (W.D. Mo. 1997) ("<u>Ryan I</u>"), sought to reduce to judgment John Ryan's unpaid federal income tax liabilities for the 1988, 1989 and 1991 taxable years. (Doc. #38, ¶ 2). On November 21, 2002, the United States moved for an installment payment order pursuant to 28 U.S.C. § 3204. (Doc. #38, ¶9).

---

[1]Mr. Ryan is an attorney by profession. (Doc. # 38).

2

Following a hearing on January 16, 2003, the district court[2] entered an Order for Installment Payments that required John Ryan to make payments of $5,000 per month towards his current and past due federal income tax liabilities. Id. Mr. Ryan subsequently failed to make payments pursuant to the Order and was directed by Judge Laughrey to pay arrearages totaling $24,500 to bring himself into compliance with the Order. Id. As of January 31, 2005, John Ryan had not made any payments to the United States pursuant to the Order for Installment Payments for the prior twelve (12) months. (Doc. #38, ¶11). The unpaid balance of the judgment in Ryan I, together with statutory interest as of November 30, 2004, was $225,682.55. (Doc. #39, Ex. 10).

### B.      John Ryan's Federal Income Tax Liability: 1993, 1994, 1999, 2000, 2001, 2002

Additionally, John Ryan has failed to fully satisfy his federal income tax obligations for the 1993, 1994, 1999, 2000, 2001, 2002 taxable years. (Doc. #39, ¶ 10). The unpaid balance of these obligations, together with statutory interest as of November 30, 2004, was $322,692.17 (Doc. #39, Ex. 10).

### C.      John Ryan's Total Tax Liability

The unpaid balance of the assessments made against John Ryan for unpaid federal income taxes and statutory additions to tax for the 1988, 1989, 1991, 1993, 1994 and 1999-2002 taxable years, along with accrued but unassessed penalties and statutory interest, was $558,053.39 as of November 30, 2004. (Doc. #39, ¶12, Ex. 10).

Count II: Federal Income Tax Liabilities of John and Linda Ryan

---

[2]The Honorable Nanette K. Laughrey presiding. (Doc. #38)

Case 4:04-cv-00531-GAF   Document 46   Filed 06/16/05   Page 3 of 23

According to a certified Internal Revenue Service (IRS) transcript, John and Linda Ryan filed their 1998 federal income tax return (Form 1040) with the IRS on October 23, 2002. (Doc. #38, ¶7). As of November 30, 2004, there was an unpaid balance of $9,678.67, including accrued interest and penalties for the 1998 tax year. Id.

Count III: Foreclosure of Federal Tax Liens Against Subject Real Property

**A.    *The Subject Real Property***

The real property upon which the United States seeks foreclosure to satisfy John Ryan's federal income tax liabilities, is described as follows:

Tract #1
The Southwest Quarter (SW1/4) of the Southwest Quarter (SW1/4) of Section Twenty-Seven (27), Township Forty-Six (46), Range Thirty-Three (33) in Cass County, Missouri.

Tract #2
The Northwest Quarter of the Southwest Quarter of Section 27, Township 46, Range 33, in Cass County, Missouri.

Tract #3
The North 85 feet of the West 110 feet of Lot 1, E.A. Axtell, Jr.'s First Subdivision, a subdivision of Grandview, Jackson county, Missouri according to the recorded plat thereof.

Tract #4
All of Lot 1, E.A. Axtell, Jr.'s First Subdivision, a subdivision in Grandview, Jackson County, Missouri, EXCEPT the north 85 fee of the west 110 feet thereof.

(Doc. #39, ¶16). All of the subject real property described above is owned or held by John and Linda Ryan as tenants by the entireties. (Doc. #39, ¶ 17). John and Linda Ryan's Belton, Missouri residence is located on Tracts #1 and #2. (Doc. #38, FN7). Tracts #3 and #4 consist of an office building and parking lot owned by the Ryans. Id.

**B.    *Notice of Federal Tax Liens***

As a result of the Treasury Secretary's proper and timely made assessment against John Ryan for

4

unpaid federal income taxes for the 1998, 1989, 1991, 1993, 1994 and 1999-2002 tax years, tax liens in favor of the United States arose as of the dates of the assessments pursuant to 26 U.S.C. §§ 6321 and 6322 in the amount of the assessment plus all statutory additions to tax accruing thereon under law. (Doc. #39, ¶15). The federal tax liens attributable to John Ryan's federal income tax liabilities attached to his interest in all property he then owned or subsequently acquired, including property owned or acquired by John Linda Ryan as tenants by the entireties. As such, these federal income tax liens attached to the subject real property, Tracts #1-#4 described above. Id.

With reference to the federal income tax obligations owed by John Ryan for tax years 1988, 1989, 1991, 1993, 1994 and 1999-2002, the IRS filed notices of federal tax lien on John Ryan's property (Tracts #3 and #4) with the Recorder of Deeds for Jackson County, Missouri, on July 7, 1993, April 16, 1996 and March 23, 2004 and re-filed these notices of federal tax lien on February 8, 2002 and July 26, 2002. (Doc. #39, ¶13). Additionally, with respect to these same federal income tax obligations, the IRS filed notices of federal tax lien on John Ryan's property (Tracts #1 and #2) with the Recorder of Deeds for Cass County, Missouri, on February 28, 1994, April 16, 1996, January 21, 1997 and March 11, 2004, and re-filed these notices of federal tax lien on January 24, 2004 and July 2, 2002. (Doc. #39, ¶14).


C.      *The Claim of Jackson County, Missouri to Tracts #3 and #4*

The claim of the Defendant, Michael O'Flaherty, the Jackson County, Missouri Assessor, is based on the real property tax and special assessment liens that arose and attached to Tracts #3 and #4 following the failure of John and Linda Ryan to fully pay the property taxes and special assessments levied against Tracts #3 and #4 by Jackson County, Missouri for the 2001, 2002, 2003 and 2004 taxable years as set

5

forth below. (Doc. #39, ¶18).  The parties agree that these real property tax and special assessment liens are entitled to priority over the tax liens of the United States pursuant to IRC § 6323(b)(6).  (Doc. #39, ¶21).

1.  *Tract #3: Taxes and Special Assessments*.  The following property taxes and special assessments have been assessed against Tract #3 (Parcel No. 67-130-07-13-00-0-00-000) by Jackson County, Missouri, and remain unpaid in the amounts indicated below (Doc. #39, ¶ 19):

| Taxes and Special Assessments Levied Against Tract #3 | |
| --- | --- |
| Total Delinquent for Tax Year 2001 | $4,966.58 |
| Total Delinquent for Tax Year 2002 | $4,342.42 |
| Total Delinquent for Tax Year 2003 | $3,752.50 |
| Total for Tax Year 2004 | $3,069.82 |
| **TOTAL** | **$16,131.32** |

2.  *Tract #4: Taxes and Special Assessments*.  The following property taxes and special assessments have been assessed against Tract #4 (Parcel No. 67-130-07-12-00-0-00-000) by Jackson County, Missouri, and remain unpaid in the amounts indicated below (Doc. #39, ¶20):

| Taxes and Special Assessments Levied Against Tract #4 | |
| --- | --- |
| Total Delinquent for Tax Year 2001 | $1,738.01 |
| Total Delinquent for Tax Year 2002 | $1,485.07 |
| Total Delinquent for Tax Year 2003 | $1,283.35 |
| Total for Tax Year 2004 | $1,049.88 |
| **TOTAL** | **$5,556.31** |

D.   ***The Claim of the Defendants, Thomas and Susan O'Reilly to Tract #4***

The claim of the Defendants, Thomas and Susan O'Reilly, to Tract #4 is evidenced by a promissory note in the amount of $100,000 signed by John and Linda Ryan and dated February 7, 1992. (Doc. #39, ¶22).  John and Linda Ryan signed a deed of trust dated February 7, 1992 that pledged Tract #4 as security for the repayment of this promissory note.  (Doc. #39, ¶ 23).  As of March 9, 1994, John and Linda Ryan had paid Thomas and Susan O'Reilly $54, 350.00 on the note.  (Doc. #39, ¶ 24).  After

7

all credits and setoffs, John and Linda Ryan remain indebted to Thomas and Susan O'Reilly in the principal amount of $61,650.00, together with interest thereon from and after March 9, 1994 at the rate of 8.00% per annum. (Doc. #39, ¶25). John and Linda Ryan are further indebted to Thomas and Susan O'Reilly for their reasonable attorneys' fees and costs pursuant to the terms of the promissory note. (Doc. #39, ¶26). The parties agree that the sums aforementioned are secured and constitute a lien senior and superior to the tax liens of the United States with respect to Tract #4 of the subject real property for all sums due and owing Thomas and Susan O'Reilly. (Doc. #39, ¶37).

### E.   *Calculation of the Spouses' Interests in the Encumbered Entireties Property*

The parties have stipulated to the aforementioned facts. However, the parties dispute the value of John Ryan and Linda Ryan's individual interests in the subject real property (Tracts #1–#4, described above) which they hold as tenants by the entirety. The United States, relying on United States v. Rodgers, 461 U.S. 677, 694 (1983), urges this Court to employ an actuarial analysis and to consider the different life expectancies of men and women when determining the individual interests of spouses in property held as tenants by the entirety. (Doc. #38 at pp. 12-13). The United States' expert, Paul G. Stern ("Stern"), engages in a lengthy actuarial analysis and concludes that John Ryan has a 39.579% interest in the subject real property while Linda Ryan has a 60.421% interest in the subject real property. Id.

The expert retained by John and Linda Ryan engaged in his own actuarial analysis and arrived at a different conclusion. (Doc. #41). The Ryan's expert, Joseph Nichols ("Nichols"), concluded that John Ryan has a 33.4776% interest in the subject real property while Linda Ryan has a 66.5224% interest. Id. In its Reply Suggestions, the United States' expert, Stern, states that he agrees with Nichol's calculation of the remainder factor (0.33932), income factor (0.66068), single life factors (age 55 – 0.33932; age 64

8

– 0.51200), joint and survivor remainder (0.33932) and required remainder factor (0.57171). (2nd Dec. Paul Stern at ¶16). Stern further concurs with Nichol's calculation of the income factor (0.42829) and the 50% allocation of the income factor to husband and wife (0.214145). Id.

Stern challenges Nichols' determination that the "Probability that Husband Survives Wife" is 21.1% and the "Probability that Wife Survives Husband" is 78.9%. Correspondingly, Stern challenges Nichols' subsequent calculation of the "Allocation of Remainder Factor to Husband" (0.12063) and "Allocation of Remainder Factor to Wife" (0.45108) as the "Allocation of Remainder Factor to Husband/Wife" is calculated by multiplying each of the probabilities (21.1% and 78.9%) by the required remainder factor of 0.57171. (2nd Dec. Paul Stern at ¶17). According to Stern, Nichols' calculation of these probabilities is "incorrect." Id. Although he was unable to determine how Nichols selected the probabilities that one spouse would survive the other, Stern "do[es] not believe that [Nichols'] calculations of the remainder interests are in accordance with generally accepted actuarial principles, including those principles set forth in [the] excerpt from the Society of Actuaries Textbook on Life Contingencies, 2d ed. (1969) published by the Society of Actuaries." (2nd Dec. Paul Stern at ¶19, Attach. D, E). Sterns failed to explain how or why Nichols' selected probabilities fail to comply with generally accepted actuarial principles. Although Sterns attached these principles to his opinion, without further interpretation and guidance the information contained therein is indecipherable.

In addition to attacking Nichols' calculation of the probabilities that one spouse would survive the other in its Reply Suggestions, the United States further argued "in any event, Linda Ryan's opposition to the motion for summary judgment lacks merit because she is only entitled to half of the net sales proceeds from the foreclosure sale of the subject real property." (Doc. #42). Relying on In re Gallivan, 312 B.R.

9

662, 666 (Bankr. W.D. Mo. 2004), the United States argues that "spouses hold equal interests in property held in the form of a tenancy by the entireties." Id. Therefore, the United States contends that because the Government is entitled to 50% of the proceeds of the sale of the subject real property, there can be no genuine issue of material fact that the United States is entitled to at least 39.579% of the proceeds in this case. Id.

## II.    Standard

The United States filed this Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  According to this Rule, summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When considering this Motion, the Court views all facts in the light most favorable to the Ryans and gives them the benefit of all reasonable inferences.  See Prudential Ins. Co. v. Hinkel, 121 F.3d 364, 366 (8th Cir. 1997).  The Court will not weigh the credibility of the evidence, but rather will focus on whether a genuine issue of material fact exists.  Roberts v. Browning, 610 F.2d 528, 531 (8th Cir. 1979); United States v. Porter, 581 F.2d 698, 703 (8th Cir. 1978).

An issue of material fact is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). When the evidence supports conflicting conclusions, a *genuine* issue of material fact exists and summary judgment should be denied.  Kells v. Sinclair Buick–GMC Truck, Inc., 210 F.3d 827 (8th Cir. 2000) (emphasis added).  The "materiality" of a disputed fact is determined by the substantive law governing the claim.  Anderson, 477 U.S. at 248.  "Disputes over facts that might affect the outcome of the lawsuit

10

according to applicable substantive law are material." Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998) *citing* Anderson, 477 U.S. at 248.

The summary judgment rule is intended "to isolate and dispose of factually unsupported claims" and should be applied to accomplish this purpose. Prudential Ins. Co., 121 F.3d at 366. In the interest of promoting judicial economy, summary judgment should be granted to prevent the trial of cases lacking a genuine issue of material fact. Inland Oil and Transp. Co. v. U.S., 600 F.2d 725, 728 (8th Cir. 1979).

## III. Analysis

### A. The United States is entitled to a judgment for the unpaid balances of the tax assessments made against John Ryan for the 1993, 1994 and 1999-2002 tax years.

In Count I of the complaint, the United States seeks to reduce to judgment the federal income tax liabilities of John Ryan for assessments made by the IRS for the 1993, 1994 and 1999-2002 tax years. The Court is authorized to reduce these assessments to judgment pursuant to 26 U.S.C. § 7402(a) which provides:

> (a) **To issue orders, process, and judgments.**—The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

As the parties have stipulated to the accuracy of the assessments made against John Ryan for unpaid federal income taxes and statutory additions to tax for the 1993, 1994 and 1999-2002 tax years, the United States is entitled to Summary Judgment on Count I of the complaint.

A federal tax assessment is presumptively correct evidence of a taxpayer's liability and satisfies the Government's burden of proof so that the United States may rest its case. United States v. Janis, 428 U.S.

11

433, 440-41 (1976); Anderson v. United States, 561 F.2d 162, 165 (8th Cir. 1997); Kiesel v. United States, 545 F.2d 1144, 1146 (8th Cir. 1976). The Eighth Circuit Court of Appeals has explained, "[t]he law is that such assessment is presumptively correct and 'the burden is on the taxpayer to overcome this presumption' by countervailing proof." United States v. Strebler, 313 F.2d 402, 403-04 (8th Cir. 1963) quoting Paschal v. Blieden, 127 F.2d 398, 401 (8th Cir. 1942). The penalties assessed against John Ryan for his failure to timely file his tax returns and pay his federal income tax liabilities (as well as his failure to pay estimated taxes) are also entitled to a presumption of validity. Boles Trucking, Inc. v. United States, 77 F.3d 236, 241-42 (8th Cir. 1996); Rubber Research, Inc. v. Commissioner, 422 F.2d 1402, 1407 (8th Cir. 1970).

If John Ryan had any basis for opposing the claim of the United States for his unpaid federal income tax liabilities for the 1993, 1994 and 1999-2002 taxable years, he must have presented his opposition by sworn affidavit in accordance with Fed. R. Civ. P. 56(e). Ryan cannot rely upon his answer in this case or conclusory denials of liability. United States v. Trager, 53 F.R.D. 654, 655-56 (E.D. Mo. 1971). Certified IRS transcripts reveal that the tax assessments made against John Ryan were based on the Form 1040 returns that Ryan filed for the 1993, 1994, and 1999-2002 tax years. As John Ryan has stipulated to those tax assessments and the outstanding balances of the assessments, Ryan cannot show that they were erroneous or arbitrary. Therefore, Summary Judgment is GRANTED in favor of the United States on Count I of the complaint. The unpaid balances of the federal income tax assessments made against John Ryan for the 1993, 1994 and

Case 4:04-cv-00531-GAF   Document 46   Filed 06/16/05   Page 12 of 23

1999-2002 tax years as set forth below are HEREBY REDUCED TO JUDGMENT pursuant to 26 U.S.C. § 7402(a):

| John Ryan's Federal Income Tax Liabilities | | |
|---|---|---|
| Tax Period Ending | Unpaid Balance of Assessments | Unpaid Balance of Assessments Plus Accrued Interest and Penalties *as of November 30, 2004* |
| 12/31/1993 | $12,377.21 | $22,095.67 |
| 12/31/1994 | $47,440.79 | $83,945.18 |
| 12/31/1999 | $26,141.84 | $30,121.81 |
| 12/31/2000 | $41,684.22 | $49,902.93 |
| 12/31/2001 | $50,979.40 | $64,518.36 |
| 12/31/2002 | $59,040.86 | $72,108.22 |
| **TOTAL** | | **$322,692.17** |

**B.** *The United States is entitled to foreclosure against the real property owned by John Ryan and his wife as tenants by the entireties.*

In Count III of the complaint, the United States seeks to foreclose on tax liens arising in favor of the United States as a result of the assessments made against John Ryan for unpaid federal income taxes and statutory additions to tax for the 1988, 1989, 1991, 1993, 1994 and 1999-2002 tax years.[3] These tax liens encumber four tracts of real property held by John Ryan and his wife, Linda Ryan, as tenants by the entirety. The United States seeks foreclosure on these properties pursuant to 26 U.S.C. § 6321 which

---

[3] John Ryan's outstanding federal income tax liabilities for the 1988, 1989 and 1991 tax years were reduced to judgment in Ryan I. John Ryan's outstanding federal income tax liabilities for the 1993, 1994 and 1999-2002 tax years were reduced to judgment in this Order.

13

provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6322 further states:

> Unless another date is specifically fixed by law, the lien imposed by Section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

Here, the parties agree that tax liens attributable to John Ryan's unpaid federal income tax liabilities attach to his interest in all property and rights he presently owns and subsequently acquires, including property held by John and Linda Ryan as tenants by the entireties. The four tracts of real property upon which the United States seeks foreclosure are owned jointly by John and Linda Ryan as tenants by the entireties and are described as follows:

Tract #1

The Southwest Quarter (SW1/4) of the Southwest Quarter (SW1/4) of Section Twenty-Seven (27), Township Forty-Six (46), Range Thirty-Three (33) in Cass County, Missouri.

Tract #2

The Northwest Quarter of the Southwest Quarter of Section 27, Township 46, Range 33, in Cass County, Missouri.

Tract #3

The North 85 feet of the West 110 feet of Lot 1, E.A. Axtell, Jr.'s First Subdivision, a subdivision of Grandview, Jackson county, Missouri according to the recorded plat thereof.

Tract #4

All of Lot 1, E.A. Axtell, Jr.'s First Subdivision, a subdivision in Grandview, Jackson County, Missouri, EXCEPT the north 85 fee of the west 110 feet thereof.

However, the federal tax lien which attached to the subject real property as provided by 26 U.S.C. §§ 6321 and 6322 is not self-executing. Rather, the Attorney General, at the request of the Secretary of

14

the Treasury, must institute a civil action in federal district court "to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a). Any person "having liens upon or claiming any interest in the property involved in such action" must be named as a party. 26 U.S.C. § 7403(b). Finally, Congress has empowered the federal district courts to "determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States [is] established, [the district court] may decree a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c).

### 1. The priority of the tax liens and claims has been established.

Pursuant to 26 U.S.C. § 7403, the United States has filed this action to enforce its tax liens on the four tracts of real property described above. In addition to John and Linda Ryan, the owners of the subject real property, the United States named the First National Bank of Missouri, Gordon D. Gorman, Thomas and Susan O'Reilly and the Jackson County Assessor, Michael O'Flaherty, as Defendants in this action pursuant to 26 U.S.C. § 7403(b). Only the claims of the O'Reillys and the Jackson County Assessor are considered in this Motion.[4]

The claim of Thomas and Susan O'Reilly is based on the promissory note signed by John and Linda Ryan on February 7, 1992 in the amount of $100,000. Repayment of the note was secured by a February

---

[4] Defendant First National Bank of Missouri filed a disclaimer of interest on November 15, 2004. (Doc. #31). Gordon D. Gorman failed to answer, plead or otherwise defend in this action, and did not respond to an order to show cause. By Order dated December 2, 2004, the claims of the First National Bank of Missouri and Gordon D. Gorman were determined to be junior and inferior to the liens and claims of the other parties, and a "take nothing" judgment was entered as to those Defendants.

7, 1992 deed of trust that pledged Tract #4 of the subject real property as described above. As stipulated by the parties, the note remains unpaid in the principal amount of $54,250.00, together with interest at the rate of 8.0% per annum from March 9, 1994 and the O'Reillys' reasonable attorneys' fees and costs. The parties have also stipulated that with respect to Tract #4, the O'Reillys' deed of trust is entitled to priority over the federal tax liens.

The claims of the Jackson County Assessor are based on the Jackson County property taxes and special assessments levied against Tracts #3 and #4 of the subject real property for the 2001, 2002, 2003 and 2004 taxable years. The parties have stipulated that with respect to Tracts #3 and #4, these local property taxes and special assessments are entitled to priority over the federal tax liens pursuant to 26 U.S.C. § 6323(b)(6).

Apart from the federal tax liens attributable to John Ryan's 1988, 1989, 1991, 1993, 1994 and 1999-2002 federal income tax liabilities, there are no known encumbrances with respect to Tracts #1 and #2 of the subject real property. The federal income tax liens are therefore entitled to first priority with respect to Tracts #1 and #2. With respect to Tract #3, the Jackson County property tax liens are superior to the federal income tax liens. Finally, with respect to Tract #4, the federal income tax liens are subordinate to the deed of trust filed by Thomas and Susan O'Reilly and the property taxes assessed by Jackson County against Tract #4.

 2. **A genuine issue of material fact exists with respect to the valuation of each spouses' individual interest in the subject real property**.

Although the parties do not dispute that the United States is entitled to foreclose on the encumbered property to satisfy John Ryan's outstanding federal income tax obligations, John and Linda Ryan dispute the valuation of their separate interests in the subject real property they own as tenants by the entirety. The

16

United States argues that Linda Ryan is entitled to 60.421% of the proceeds of the foreclosure sale. John and Linda Ryan contend that Linda Ryan's share of the sale proceeds is 66.5224%.

Federal income tax liens have attached to the property John and Linda Ryan own as tenants by the entirety as a result of the Supreme Court's decision in United States v. Craft, 535 U.S. 274 (2002). In Craft, the Supreme Court held that a delinquent taxpayer spouse, as a tenant by the entirety, possessed "property" or "rights to property" to which federal tax liens could attach. Craft, 535 U.S. at 276. Unfortunately, the Supreme Court in Craft declined to give the lower courts any guidance in determining the proper valuation of the delinquent and non-delinquent spouses individual interests in the property. *See* Craft, 535 U.S. at 289 ("We express no view as to the proper valuation of respondent's husband's interest in the entireties property, leaving this for the Sixth Circuit on remand.").

The United States argues that this Court should engage in an "actuarial analysis which takes into account the different life expectancies of men and women in determining the respective interests of spouses in tenancy by the entireties property." (Doc. #38). This approach to valuation of entireties property is supported by the Supreme Court's dicta in United States v. Rodgers, 461 U.S. 677 (1983). In Rodgers, 461 U.S. at 687-690, the Government filed suit against a widow and a divorcee to enforce federal tax liens against their respective delinquent taxpayer husbands. The issue in the case was "whether § 7403 empowers a federal district court to order the sale of a family home in which a delinquent taxpayer had an interest at the time he incurred his indebtedness, but in which the taxpayer's spouse, who does not owe any of that indebtedness, also has a separate "homestead" right as defined by [State] law." Rodgers, 461 U.S. at 680. The Court held that "the statute does grant the power to order the sale, but that its exercise is limited to some degree by equitable discretion." Id. The Court further held that, "if the home is sold, the

17

non-delinquent spouse is entitled, as part of the distribution of proceeds required under § 7403, to so much of the proceeds as represents complete compensation for the loss of the homestead estate." Id.

Similar to the Craft decision, the Supreme Court in Rodgers also declined to value the spouses' individual interests in the property. See Rodgers, 461 U.S. at 698 ("The exact method for the distribution required by § 7403 is not before us at this time."). However, the Court offered the following hypothetical:

> For example, if we assume, only for the sake of illustration, that a homestead estate is the exact economic equivalent of a life estate, and that the use of a standard statutory or commercial table and an 8% discount rate is appropriate in calculating the value of that estate, then three non-delinquent surviving or remaining spouses, aged 30, 50 and 70 years, each holding a homestead estate, would be entitled to approximately 97%, 89% and 64%, respectively, of the proceeds of the sale of their homes as compensation for that estate. In addition, if we assume that each of these hypothetical non-delinquent spouses also has a protected half-interest in the underlying ownership rights to the property being sold, then their total compensation would be approximately 99%, 95% and 82%, respectively, of the proceeds from such sale.

Rodgers, 461 U.S. at 698-99 (emphasis in original).

This hypothetical was applied and refined by the Ninth Circuit in In re Pletz, 221 F.3d 114 (9th Cir. 2000). In Pletz, 221 F.3d at 1117, a bankruptcy debtor argued that Oregon law[5] did not allow the IRS's tax lien to attach to his possessory interest in property he owned as a tenant by the entirety but rather only attached to his survivorship interest in that property. The debtor relied upon the holding in Rodgers where the Supreme Court employed single-life actuarial tables. Pletz, 221 F.3d at 1117. Under a single-life analysis, the non-debtor spouse would be considered to have all the possessory interest in the property while the spouses were still alive and the debtor spouse's interest would consist only of his or her right of survivorship. Id. The Ninth Circuit rejected this argument, noting that the non-debtor spouses in Rodgers

---

[5] Oregon law permits the creditor of one spouse to execute on that spouse's interest in property held as a tenant by the entirety with a nondebtor spouse. Pletz, 221 F.3d at 1117 (internal citations omitted).

18

were either widows or divorcees.  Id.  Because the debtor in Pletz was still alive and enjoyed both an

undivided right to the property for his life and a right of survivorship, the Ninth Circuit concluded that the

district court did not err in using joint life actuarial tables which "reflect the concurrent interests of both

spouses, rather than simply valu[ing] the wife's interest as though she possessed a single life estate."  Id.

The Ryans do not contest employing an actuarial analysis to determine the proper valuation of each

spouses' interest in the entireties property.  In fact, the experts retained by both parties appear to rely upon

the same formula.  Nichols asserts that his calculation is based upon:

> the principles set forth in Section 7520 of the Internal Revenue Code of 1986, as
> amended, the Treasury Regulations issued thereunder, and IRS Publication 1457 which
> incorporate a mortality component based on Table 90CM and an interest rate component
> based upon 120% of the applicable federal mid-term rate compounded annually.

(Doc. #41).  Similarly, Stern's calculation relies upon:

>  the principles set forth in Section 7520 of the Internal Revenue Code of 1986 (26
> U.S.C.). the applicable Treasury Regulations (26 C.F.R.), and IRS Publication 1457 (7-
> 1999) (Actuarial Values - Book Aleph) (Remainder, Income and Annuity Factors for One
> Life, Two Lives, and Terns Certain), which incorporates a mortality component based on
> Table 90CM and an interest rate component based on 120% of the applicable federal
> mid-term rate compounded annually.

(Doc. #38, Ex. 12).  The experts appear to rely on the same principles derived from 26 U.S.C. § 7520,

the corresponding Treasury Regulations and IRS Publication 1457 when valuing John and Linda Ryan's

individual interests in the subject real property.  Furthermore, both experts specifically rely on Example 7

set forth in IRS Publication 1457.  *See* Doc. #41 and Doc. #38, Ex. 12.

19

The sole disagreement between the experts is the calculation of the "Probability that Husband Survives Wife" and the "Probability that Wife Survives Husband." Nichols, the expert retained by the Ryans, argues that the Probability that Husband Survives Wife is 21.1% whereas Stern, the expert retained by the United States, argues that this probability is 31.5948%. Correspondingly, Nichols contends that the Probability that Wife Survives Husband is 78.9% and Stern asserts that this probability is 68.4052%. Nichols does not provide the Court with his methodology for calculating these probabilities. Stern contends that his calculation of these survival probabilities is based upon the summation of the probabilities that one spouse will survive the other for the next 54 years. Stern provides the Court with a spreadsheet showing all of these probabilities, but fails to cite the Court to the source of this document. It is unclear how Stern calculated the probabilities for each year or if these probabilities were obtained from an actuarial publication.

The Court finds that a genuine issue of material fact for trial is presented by the divergent opinions of the experts regarding the calculation of these survival probabilities. The evidence offered in the form of expert testimony supports conflicting conclusions. The valuation of the spouses' individual interests in the subject real property is the gravamen of this dispute. The Court must refrain from weighing the credibility of the competing expert opinions in ruling on this Motion for Summary Judgment. As a genuine issue of material fact exists regarding the valuation of John and Linda Ryan's individual interests in the subject real property, this issue must be resolved at trial.

The United States argues in its Reply Suggestions in Support of this Motion that it is entitled to summary judgment because Linda Ryan "is only entitled to half of the net sales proceeds from the foreclosure sale of the subject real property" pursuant to In re Gallivan, 312 B.R. 662 (Bankr. W.D. Mo.

2004).  The court in <u>Gallivan</u> relied on a Notice issued by the IRS following <u>Craft</u>[6] and the decision of a Pennsylvania district court[7] to conclude that each spouse holds an equal interest in property held as tenants by the entirety upon which a federal tax lien has attached.  <u>Gallivan</u>, 312 B.R. at 666.  The judge rejected the argument that each spouse's life expectancy should be considered in valuing each spouse's interest finding that "if a husband and wife have unity of interest . . . then each spouse must hold an equal interest. <u>Id</u>. at 666.

Clearly, the IRS had a reason to deviate from its self-proclaimed "general rule" that each spouse's interest in entireties property should be valued equally.  *See* Footnote 5.  Regardless of the rationale, the United States has petitioned this Court to obtain John Ryan's 39.579% interest in the subject real property to satisfy John Ryan's outstanding federal income tax liabilities.  The fact that the United States *could have* argued that it was entitled to 50% of the proceeds of the foreclosure sale pursuant to the holding in <u>Gallivan</u>, does not entitle the United States to summary judgment on their requested 39.579% interest.

The United States further argues in its Reply Suggestions that the testimony of Joseph Nichols is inadmissible under Fed. R. Evid. 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) because the United State's expert opines that Nichols incorrectly calculated the survival

---

[6]In response to <u>Craft</u>, the IRS published a Notice entitled <u>Collection Issues Related to Entireties Property</u> on September 29, 2003.  Notice 2003-60, 2003 I.R.B. 643, 2003 WL 22100950 (Sept. 11, 2003).  In this Notice, the IRS states that it will rely on a number of general principles in addressing issues raised as a result of the Court's decision in <u>Craft</u> including the following: "As a general rule, the value of the taxpayer's interest in entireties property will be deemed to be one-half."  <u>Id</u>. at *3.

[7]The court in <u>Gallivan</u> adopted the reasoning of the district court in <u>Popky v. United States</u>, 326 F.Supp.2d 594 (E.D. Pa. 2004) *aff'd by* <u>Popky v. United States</u>, 2005 WL 1155916 (3rd Cir) which concluded "equal division of assets between spouses seems equitable and parallels the distribution of entireties property when an entireties estate is severed because of a sale with consent of both tenants, divorce or other reasons."

Case 4:04-cv-00531-GAF   Document 46   Filed 06/16/05   Page 21 of 23

probabilities. An expert's testimony is not inadmissible under Fed. R. Evid. 702 and <u>Daubert</u> merely because an expert retained by the opposing party disagrees with his or her opinion. Experts representing opposing parties are expected to offer differing opinions. It is the duty of the factfinder to discern which expert's opinion is more reliable.

Additionally, the United States argues that Nichols' testimony should be excluded pursuant to Fed. R. Evid. 702 and <u>Daubert</u> because the Ryans have not responded to the criticism of "Nichols' determination of the Ryans' life interests as being inconsistent with generally accepted actuarial principles." (Doc. #42). Essentially, the United States argues that the Ryans should have addressed this Motion for Summary Judgment, which criticized Nichols' opinion, as a motion to exclude evidence. If the United States wished to challenge the admissibility of Nichols' testimony under Fed. R. Evid. 702 and <u>Daubert</u>, it should have filed the proper motion rather than latently raising the issue in its Reply Suggestions in Support of this Motion.

## <u>CONCLUSION</u>

As the parties have stipulated to the accuracy of the assessments made against John Ryan for unpaid federal income taxes and statutory additions to tax for the 1993, 1994 and 1999-2002 tax years, the United States' Motion for Summary Judgment as to Count I of the complaint is GRANTED.

With respect to the United States' Motion for Summary Judgment as to Count III of the complaint, the parties agree that the United States is entitled to foreclose on the encumbered property to satisfy John Ryan's outstanding federal income tax obligations. The parties further stipulate to the priority of the tax liens. To that extent, Summary Judgment on Count III is GRANTED. However, with respect to the valuation of John and Linda Ryan's individual interests in the subject real property, the United States'

Motion for Summary Judgment is DENIED.  As such, the issue of John and Linda Ryan's individual interests in the subject property must be decided at trial.

**IT IS SO ORDERED**.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
 United States District Court

DATED:   June 16, 2005